## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**HIZAM YEHIA**                                    Case No.
                                                  Honorable

     Plaintiff,

v.

**MICHIGAN DEPARTMENT
OF CORRECTIONS,**
and **FRANK SAWYER**
in his individual capacity,

     Defendants.

---

JONATHAN R. MARKO (P72450)
Marko Law, PLC
Attorney for Plaintiff
645 Griswold Street, Suite 4100
Detroit, MI 48226
(313) 965-4822
Fax (313) 955-5556
jon@jmarkolaw.com

---

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this Complaint that is either pending or was previously filed and dismissed, transferred or otherwise disposed of after having been assigned to a Judge in this Court.

---

## COMPLAINT AND JURY REQUEST

NOW COMES the Plaintiff, Hizam Yehia, by and through his attorneys, ERNST & MARKO LAW, PLC, and for his Complaint against the above-named Defendant states as follows:

## JURISDICTION AND VENUE

1.      Hizam Yehia ("Plaintiff") is an Arab-American male, who resides in the County of Jackson, State of Michigan.

2.      At all times relevant, Plaintiff worked for Defendant Michigan Department of Corrections at the Parnall Correctional Facility location.

3.      Defendant, Michigan Department of Corrections ("MDOC"), is a Michigan governmental agency that at all relevant times, employed Plaintiff in Jackson County, Michigan.

4.      Defendant Frank Sawyer is a Captain employed by the Michigan Department of Corrections at the Parnall Correctional Facility location.

5.      The transactions and occurrences giving rise to this action took place in the County of Jackson, State of Michigan.

6.      The amount in controversy greatly exceeds this Court's jurisdictional requirement.

7.      The Plaintiff brings this matter after exhausting his remedies with the EEOC, with the matter being closed as of April 22, 2019.

8.      This cause of action involves violations of Plaintiff's civil rights, as secured by the United States and Michigan Constitutions, and is brought pursuant to Title VII of the Civil Rights Acts of 1964, as well as the Fourteenth Amendment to the United States Constitution, and pendant claims arising under the laws of the State of Michigan.

## FACTS

9.      Plaintiff, by reference, incorporates the preceding paragraphs of his Complaint as though fully set forth herein.

10.      Plaintiff began working for Defendant Michigan Department of Corrections on or about March 27, 2015.

11.      Since then, Plaintiff has been subjected to a culture of racism that has been ignored, cultivated, and/or perpetrated by the Defendant and employees at Defendant's facilities, including co-workers, supervisors, and other individuals employed by Defendant.

12.      Defendant's employees consistently make unwelcome comments, innuendos, and jokes about Plaintiff's national origin, his religion, and his weight.

13.      Plaintiff is one of few minorities employed by the MDOC at the Parnall facility.  Most of his co-workers are Caucasian.

14.     Plaintiff has been told by other officers that the facility "is not the Middle East – we have rules here" while standing in line to clock in for work, while other officers laughed at him.

15.     Officer Amy Bungart tells Plaintiff that he is "fat," tells him to "grow up and stop eating pizza and wings every day," and harasses him about his weight and appearance on a consistent basis.

16.     On one occasion, Officer Bungart told another officer, Officer McDonald, with regard to Plaintiff's AR-15, "…they let him have that thing? I wonder if they checked him for it.  He might do something crazy with it."

17.     On another occasion, Officer O'Connor and Steve Jackson told Plaintiff not to go on a "shooting spree."

18.     When there were international terrorist threats on the news, officers employed by Defendant would make offensive comments such as "your people are at it again, Yehia," and "is that your uncle, Yehia? These damn Arabs."  When Plaintiff would question what they meant, officers would respond, "the terrorist attack…duh!"

19.     Officer Crittenden would make derogatory comments about Middle Easterners, including Plaintiff's wife, stating that Middle Eastern men "slave their wives" and lock them up in the basement; and that Plaintiff sold bomb parts on the

Amazon website; and asked Plaintiff how was his business selling bomb parts online.

20.     Officers Hampton and Closson made offensive and untrue comments about Plaintiff making bombs and working with ISIS.

21.     If Plaintiff set off the metal detector prior to entering the facility, Officer Scott Pack would often make comments such as, "Yehia, I hope you're not wearing that bomb vest today."

22.     Shift Commander, Captain Sawyer constantly makes comments to Plaintiff regarding his national origin and religion, including telling Plaintiff that he will never go to the Middle East because they "beat their women," "fuck goats," "blow [themselves] up," and the women cover their faces like "ninjas."

23.     Captain Sawyer also told Plaintiff that if he was going to "blow the [facility] up," to do it on a day when Captain Sawyer was off from work so that he would not "kill him during the explosion."

24.     Further, Captain Sawyer called Plaintiff a "goat fucker" and a "cow fucker."

25.     If Plaintiff was ever tardy for a meeting or event, co-workers would say to him "why are you late?  Did you ride your camel to work?".

26.     Officer Leffler constantly makes jokes about the way Plaintiff speaks and touches his back and chest, saying "just making sure you are not wearing a bomb vest."

27.     Sargent Chad Smith frequently approached Plaintiff making insensitive comments, such as "Allah akbar, boom!"

28.     Officer McClinchey has told Plaintiff that "hates Arabs," and has further made comments about Plaintiff being "fat and lazy."

29.     Officer Terry also made offensive comments about Plaintiff's weight.

30.     Officer Enrici made phone calls while at work reporting a "terrorist in the building," referring to Plaintiff.

31.     Sargent Kolonich made numerous offensive comments about Plaintiff's race, religion and background while at work.

32.     Other employees of Defendant, knowing that Plaintiff is religiously prohibited from eating pork, put pork in his food and watch him eat it.

33.     Officer Wilt has made offensive and humiliating comments to Plaintiff during work and in front of other employees of Defendant MDOC, including "Yehia, did you marry your first cousin?," I'm surprised you didn't shoot this place up!," "you look like shit guy, Allah akbar bro," and "you guys are some crazy terrorists."

34.     Plaintiff filed reports with Defendant's Discriminatory Harassment Department; however, his complaints were not thoroughly investigated.

35.     The perpetrators of Plaintiff's racial discrimination have not been disciplined and continue to be employed by Defendant without any repercussions for their actions.

36.     Plaintiff reported his superiors and co-workers to Lieutenant Anderson and Sargent Curtis.

37.     The racially hostile work environment remains unchanged.

38.     As a result of Defendant's actions Plaintiff has suffered, and will continue to suffer, including but not limited to the following:

        a.     Stress;

        b.     Time off work;

        c.     Humiliation;

        d.     Non-economic damages;

        e.     Economic damages;

        f.     Constructive discharge;

        g.     All other injuries to be discovered throughout discovery.

## COUNT I – VIOLATION OF MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT
*Retaliation – As to All Defendants*

39.    Plaintiff, by reference, incorporates the preceding paragraphs of his Complaint as though fully set forth herein.

40.    At all relevant times, Plaintiff was an "employee" and Defendant was an "employer" within the meaning of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq.*

41.    At all relevant times, under the ELCRA, Plaintiff had a right to employment free from discrimination based on his national origin, religion, and weight.

42.    Plaintiff's act of filing complaints regarding Defendant employees' conduct was a protected activity under the ELCRA.

43.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer damages and injuries, including but not limited to:

    a.  Stress;

    b.  Humiliation;

    c.  Non-economic damages;

    d.  Economic damages;

    e.  Emotional damages;

    f.  All other injuries to be discovered throughout discovery.

### COUNT II – VIOLATION OF MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT
*Disparate Treatment - As to All Defendants*

44. Plaintiff, by reference, incorporates the preceding paragraphs of his Complaint as though fully set forth herein.

45. At all relevant times, Plaintiff was an "employee" and Defendant was an "employer" within the meaning of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq.*

46. At all relevant times, under the ELCRA, Plaintiff had a right to employment free from discrimination based on his national origin, religion, and weight.

47. Defendant, through its agents, representatives, and employees, was predisposed to discrimination on the basis of race and acted in accordance with that predisposition.

48. Defendant, through its agents, representatives, and employees, treated Plaintiff differently from similarly situated Caucasian employees in the terms and conditions of employment, on the unlawful basis of national origin, religion, and weight.

49. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered, and continues to suffer, injuries and damages.

## COUNT III – VIOLATION OF MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT
*Hostile Work Environment – As to All Defendants*

50.     Plaintiff, by reference, incorporates the preceding paragraphs of his Complaint as though fully set forth herein.

51.     At all relevant times, Plaintiff was an "employee" and Defendant was an "employer" within the meaning of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq.*

52.     Plaintiff was subjected to unwelcome verbal conduct and treatment due to his national origin, religion, and weight.

53.     The Defendant violated Plaintiff's rights under the ELCRA by allowing the unwelcome conduct to affect a term or condition of employment, including unreasonably interfering with Plaintiff's work performance, and thus creating an intimidating and hostile work environment.

54.     As a result of the discrimination on the basis of Plaintiff's race and religion, Plaintiff was retaliated against after reporting and forced to leave his employment.

55.     As a direct and proximate cause of Defendant's unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages.

<u>**COUNT IV**</u>
<u>**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000e-2**</u>
*Hostile Work Environment - As to Defendant MDOC*

56.     Plaintiff, by reference, incorporates the preceding paragraphs of his Complaint as though fully set forth herein.

57.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* prohibits discrimination and retaliation against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race.

58.    At all material times, Plaintiff has been an employee of Defendant employer, MDOC, covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

59.    Plaintiff is a Muslim and Arab-American, in the minority at the MDOC facility to which Plaintiff is assigned, and is a member of a protected class under Title VII of the Civil Rights Act of 1964.

60.    As an employer within the meaning of Title VII of the Civil Rights Act of 1964, Defendant MDOC owed Plaintiff a duty not to discriminate against him with respect to employment, promotional opportunities, compensation, or other conditions or privileges of employment on the basis of Plaintiff's race or religion.

61.    Because of his race and religion, Plaintiff has been and continues to be subjected to treatment during his career with Defendant MDOC that has been disparate from that accorded to non-Arab American and non-Muslim co-workers of Defendant MDOC and at the facility to which Plaintiff is assigned, who have been treated more favorably than Plaintiff.

62.     As a result of the discrimination on the basis of Plaintiff's race and religion, Plaintiff was retaliated against after reporting and forced to leave his employment.

63.     There is no legitimate business reason justifying the retaliation to which Plaintiff has been subjected during his career at Defendant MDOC and while assigned to the facility to which Plaintiff has been assigned by Defendant MDOC.

64.     As a direct and proximate result of Defendant MDOC's unlawful actions against Plaintiff described herein, Plaintiff has suffered injuries and damages, including, but not limited to: potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of ordinary life pleasures.

65.     Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* Defendants are liable to Plaintiff for all damages allowed under Federal Law.  To the extent that damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.  Defendants' conduct was and remains extreme and outrageous subjecting Defendants to punitive damages.

66.    As a direct and proximate cause of Defendant's unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages.

## COUNT V
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000e-2
### *Disparate Treatment - As to Defendant MDOC*

67.    Plaintiff, by reference, incorporates the preceding paragraphs of his Complaint as though fully set forth herein.

68.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* prohibits discrimination against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race.

69.    At all material times, Plaintiff has been an employee of Defendant employer, MDOC, covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

70.    Plaintiff is a Muslim and Arab-American, in the minority at the MDOC facility to which Plaintiff is assigned, and is a member of a protected class under Title VII of the Civil Rights Act of 1964.

71.    As an employer within the meaning of Title VII of the Civil Rights Act of 1964, Defendant MDOC owed Plaintiff a duty not to discriminate against him with respect to employment, promotional opportunities, compensation, or other conditions or privileges of employment on the basis of Plaintiff's race or religion.

13

72.     Because of his race and religion, Plaintiff has been and continues to be subjected to treatment during his career with Defendant MDOC that has been disparate from that accorded to non-Arab American and non-Muslim co-workers of Defendant MDOC and at the facility to which Plaintiff is assigned, who have been treated more favorably than Plaintiff.

73.     The disparate and less favorable treatment to which Plaintiff has been subjected during the time that she has been employed by Defendant MDOC has included adverse employment actions on the basis of Plaintiff's race and religion.

74.     The disparate and less favorable treatment to which Plaintiff has been subjected during the time that he has been employed by Defendant MDOC has come from both supervisory personnel and from Plaintiff's non-Arab American and non-Muslim co-workers.

75.     Defendant MDOC and the facility to which Plaintiff has been assigned by Defendant MDOC has a policy or pattern of practice that encourages management or supervisory personnel to directly discriminate against minority employees, or that tolerates the disparate and less favorable treatment of minority employees by supervisory personnel and other employees.

76.     Defendant MDOC and the facility to which Plaintiff has been assigned by Defendant MDOC has a policy or pattern of practice that encourages management or supervisory personnel to look the other way or actively encourage

disparate and less favorable treatment of minority employees by supervisory personnel and other employees.

77.    The disparate treatment to which Plaintiff has been subjected during his career at Defendant MDOC and while assigned to the facility to which Plaintiff has been assigned by Defendant MDOC has been so substantially disparate and less favorable than the treatment of non-Arab-Americans or non-Muslim employees that it raises an inference of disparate treatment discrimination.

78.    The disparate treatment to which Plaintiff has been subjected during his career at Defendant MDOC and while assigned to the facility to which Plaintiff has been assigned by Defendant MDOC has been so substantially disparate and less favorable than the treatment received by his non-minority co-workers that it unreasonably interfered with Plaintiff's work performance.

79.    There is no legitimate business reason justifying the disparate treatment to which Plaintiff has been subjected during his career at Defendant MDOC and while assigned to the facility to which Plaintiff has been assigned by Defendant MDOC.

80.    As a direct and proximate result of Defendant MDOC's unlawful actions against Plaintiff described herein, Plaintiff has suffered injuries and damages, including, but not limited to: potential loss of earnings and earning

capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of ordinary life pleasures.

81.     Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* Defendants are liable to Plaintiff for all damages allowed under Federal Law.  To the extent that damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.  Defendants' conduct was and remains extreme and outrageous subjecting Defendants to punitive damages.

82.     As a direct and proximate cause of Defendant's unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages.

**COUNT VI**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 – 42 U.S.C. § 2000e-2**
*Hostile Work Environment - As to Defendant MDOC*

83.     Plaintiff, by reference, incorporates the preceding paragraphs of his Complaint as though fully set forth herein.

84.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* prohibits discrimination against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race.

85.   At all material times, Plaintiff has been an employee of Defendant employer, MDOC, covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

86.   Plaintiff is a Muslim and Arab-American, in the minority at the MDOC facility to which Plaintiff is assigned, and is a member of a protected class under Title VII of the Civil Rights Act of 1964.

87.   As an employer within the meaning of Title VII of the Civil Rights Act of 1964, Defendant MDOC owed Plaintiff a duty not to discriminate against him with respect to employment, promotional opportunities, compensation, or other conditions or privileges of employment on the basis of Plaintiff's race or religion.

88.   Defendant MDOC, by and through its agents, representatives, and/or employees, was predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

89.   While employed by Defendant MDOC, Plaintiff was and continues to be constantly and repeatedly subjected to race and religious discrimination by Defendant, by and through its agents, servants and/or employees, said acts being made unlawful by Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e *et seq.*

90.     Defendants failed to provide a work environment free from race and religious discrimination.

91.     Defendants created a hostile work environment on the basis of Plaintiff's race and religion.

92.     Defendant MDOC and the facility to which Plaintiff has been assigned by Defendant MDOC has a policy or pattern of practice that encourages management or supervisory personnel to directly discriminate against minority employees, or that tolerates the disparate and less favorable treatment of minority employees by supervisory personnel and other employees.

93.     Defendant MDOC and the facility to which Plaintiff has been assigned by Defendant MDOC has a policy or pattern of practice that encourages management or supervisory personnel to look the other way or actively encourage disparate and less favorable treatment of minority employees by supervisory personnel and other employees.

94.     There is no legitimate business reason justifying Defendant's actions, in violation of Title VII, which specifically prohibits discrimination against any person regarding employment and/or the terms of employment on the basis of race or religion.

95.     Defendant MDOC and its agents, servants and/or employees' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

96.     As a direct and proximate result of Defendant MDOC's unlawful actions against Plaintiff described herein, Plaintiff has suffered injuries and damages, including, but not limited to: potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of ordinary life pleasures.

97.     Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* Defendants are liable to Plaintiff for all damages allowed under Federal Law.  To the extent that damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.  Defendants' conduct was and remains extreme and outrageous subjecting Defendants to punitive damages.

98.     As a direct and proximate cause of Defendant's unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages.

<u>**COUNT VII – EQUAL PROTECTION**</u>
<u>**VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE**</u>
<u>**FOURTEENTH AMENDMENT OF THE UNITED STATES**</u>
<u>**CONSTITUTOIN PURSUANT TO 42 U.S.C. § 1983**</u>
*As to the Individual Defendant Sawyer*

99.     Plaintiff, by reference, incorporates the preceding paragraphs of his Complaint as though fully set forth herein.

100.   This action is brought pursuant to 42 U.S.C. § 1983 against Defendants for purposeful discrimination, under color of law, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

101.   Plaintiff has a constitutional right to liberty, including the right to freedom from discrimination on the basis of his race and religion.

102.   As an Arab-American and Muslim, Plaintiff is a member of a protected class, and as a citizen of the United States, is entitled to equal protection under the law pursuant to the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

103.   Defendant Sawyer was at all times relevant to this action acting under color of law and within the scope of his employment.

104.   At all relevant times, Defendant Sawyer was acting pursuant to his authority as Captain and was using the power of his office to justify his actions.

105.   The right to be free from discrimination in the form of disparate treatment, retaliation, and being treated differently than other employees on the basis of race in violation of one's constitutional rights is and at all times relevant to this cause of action was a clearly established right of which a reasonable person and corrections officer in the Defendants' position under the circumstances of this case knew or should have known.

106.   Defendant's actions as set forth herein, taken because of or on the basis of Plaintiff's race, abridge Plaintiff's right to equal protection of the laws in violation of the Fourteenth Amendment of the United States Constitution.

107.   Defendant Sawyer is not entitled to governmental or qualified immunity.

108.   Defendant's callous and repeated disregard of Plaintiff's constitutional rights rises to the level of deliberate indifference.

109.   As a direct and proximate result of Defendants' unlawful actions and retaliations against Plaintiff as described herein, which constitute a violation of Plaintiff's constitutional rights, Plaintiff has suffered injuries and damages, including but not limited to: potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

110.   Pursuant to 42 U.S.C. § 1983, Defendants are liable to Plaintiff for all damages allowed under Federal Law.  To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies. Defendants' conduct was and remains extreme and outrageous subjecting Defendants to punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount that is fair and reasonable and compensates Plaintiff for his injuries, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred.

Respectfully submitted,

*/s/ Jonathan R. Marko*
JONATHAN R. MARKO (P72450)
Marko Law, PLC
Attorney for Plaintiff
645 Griswold Street, Suite 4100
Detroit, MI 48226
(313) 965-4822
Fax (313) 955-5556
jon@jmarkolaw.com

Dated:  July 9, 2019

## JURY REQUEST

Plaintiff, by and through counsel, hereby request a trial by jury in the above-captioned matter.

Respectfully submitted,

*/s/ Jonathan R. Marko*
JONATHAN R. MARKO (P72450)
Marko Law, PLC

Attorney for Plaintiff
645 Griswold Street, Suite 4100
Detroit, MI 48226
(313) 965-4822
Fax (313) 955-5556
jon@jmarkolaw.com

Dated:  July 9, 2019